1

2          IN THE UNITED STATES DISTRICT COURT FOR THE
                WESTERN DISTRICT OF MISSOURI
3                     WESTERN DIVISION

4
UNITED STATES OF AMERICA,        ) Case No. 17-00172-01-CR-W-DGK
5                                )
              Plaintiff,         ) Kansas City, Missouri
6                                ) September 14, 2017
v.                               )
7                                )
ISSE AWEIS MOHAMUD,              )
8                                )
              Defendant.         )
9  _____)

10

11            TRANSCRIPT OF HEARING ON CHANGE OF PLEA
              BEFORE THE HONORABLE ROBERT E. LARSEN
12                 UNITED STATES MAGISTRATE JUDGE


13  APPEARANCES:

14  For the Plaintiff:        Mr. Brian P. Casey
                              Mr. David Raskin
15                            Assistant United States Attorney
                              400 E. Ninth St., Ste. 5510
16                            Kansas City, MO  64106
                              (816) 426-3122
17
    For the Defendant:        Ms. Carie Allen
18                            Federal Public Defender's Off.
                              818 Grand Blvd., Ste. 300
19                            Kansas City, MO  64106
                              (816) 471-8282
20
    Court Audio Operator:     Ms. Jan Martin
21
    Transcribed by:           Rapid Transcript
22                            Lissa C. Whittaker
                              1001 West 65th Street
23                            Kansas City, MO  64113
                              (816) 914-3613
24

25  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.

1          (Court in Session at 10:04 a.m.)

2          THE COURT:  I have a referral that has been made to me

3   by Judge Kays, our Chief Judge.  It's an anticipated plea in the

4   case of *United States of America vs. Isse Aweis Mohamud*.  And

5   I've probably mispronounced all of that.  But in any case that's

6   the caption here.  The number is 17-172-01-CR-W-DGK.  Let me have

7   the AUSA's appearance, please.

8          MR. CASEY:  Brian Casey and David Raskin appearing on

9   behalf of the United States, Your Honor.

10         THE COURT:  Thank you.  And counsel for the defendant,

11  please.

12         MS. ALLEN:  Carie Allen for Isse Mohamud who appears in

13  person.

14         THE COURT:  Thank you.  Now, before we get into the plea

15  here in earnest, I did want to point out that I had had an

16  opportunity to review the Plea Agreement before this proceeding.

17  I know that the parties are probably not interested in this, but

18  there's a small little error on page 2 at the bottom of the page

19  where a letter has been omitted from the sentence there.  I don't

20  know if that's been corrected on the original one or not, but I

21  just raise it for whatever interest or lack of interest that

22  anybody has here.  I don't think it makes much difference, but I

23  did want to point it out.  Anybody want to amend any of that or

24  do we have the original here that we can do that with?

25         MS. ALLEN:  Your Honor, I think what we're referencing

is where it says "Count" when it should say "of the Indictment."

And there is just the "f the Indictment."

THE COURT: Right.

MS. ALLEN: It really doesn't make any difference to me.

THE COURT: It's just --

MS. ALLEN: I think it's very obvious what -- that

that's just a typo.

THE COURT: This is just part of my compulsive

personality working its way through here. So anyway, I just

point it out and we can ignore it if everybody is in agreement.

The other thing I wanted to take up before we get into the weeds

here, as it were, is that this matter has been, as I mentioned,

referred to me by Judge Kays. And normally, I would not be

authorized to take a plea in this type of case but for the

consent of the parties. And so is the Government consenting to

me taking the plea here?

MR. CASEY: Yes, Your Honor.

THE COURT: Now, Mr. Mohamud, I know that your counsel,

in their usual thorough fashion, has talked to you about this.

But let me just make a record here for you. This case is

currently set for a plea in front of Judge Kays. And Judge Kays

is an Article III judge. He's appointed by the President. I'm

an Article I judge. I'm appointed by the court here *en banc*.

And so normally I would not be allowed to take a plea here

without your permission to do that. And in this case it's

apparent, at least to me, that the parties want to get the plea in and Judge Kays is just not available at this moment, so he's asked me to do that. But what would happen here is if you'd decide you want to proceed like this, then I would take the plea and there would be a Report and Recommendation made to Judge Kays. You'd have an opportunity to see that. And if there are any objections to it you could raise them within 14 days. And then Judge Kays would set the case down for a sentencing at some point. Now, first of all, do you understand all of that business?

MS. ALLEN: You have to answer out loud.

MR. MOHAMUD: Yes.

THE COURT: Okay. And is it okay with you if I go ahead and take the plea here?

MR. MOHAMUD: Yes.

THE COURT: Okay. Now, we might move the microphone over so that we're picking up the defendant's responses here. Now, the first thing I need to do is, Jan, do you have a copy of the Indictment?

MS. MARTIN: Not with me, but I can get that right now. I have a copy of the Compliant, but not an Indictment. Was there an Indictment?

THE COURT: Does anybody have a copy?

MS. MARTIN: I'm sorry.

MS. ALLEN: I was going to say I have an extra copy of

the Indictment.

MR. CASEY:  Your Honor, I have a copy.

MS. ALLEN:  I actually have two.  I was --

MS. MARTIN:  Okay.  Thank you, Carie.

MS. ALLEN:  Because I had two in my file.

THE COURT:  We just need to -- thank you very much.
Okay.  The first thing I need to do is go through the Indictment,
the charge that we're talking about here.  I know that, Mr.
Mohamud, you've had a chance to review it, but we need to make a
record here today.  The Indictment alleges that sometime around
January 27th, up and to May 4th of 2017, in this district, you did
willfully and knowingly make a false statement in an application
for a passport with intent to induce and secure the issuance of
the passport under the authority of the United States for your
own use, contrary to the provisions of the law regulating the
issuance of passports and the rules prescribed pursuant to such
laws.  And that you did willfully and knowingly use the passport
-- use a passport, the issue of which was secured in any way by
reason of a false statement.  So basically they're saying here
that sometime during that period in 2017 that you made a false
statement on an application for a passport and you did so both
knowingly and intentionally.  Do you understand what you're
charged with in this count?

MR. MOHAMUD:  Yes.

THE COURT:  Okay.  Now, over here on the right-hand

1  corner of that document, it'll tell you about the penalty range

2  that is provided by statute.  What that means is this is the

3  absolute worst thing that could happen to anybody when he pleads

4  guilty to this type of a charge.  I understand there's a Plea

5  Agreement, but the statute provides for a penalty of not more

6  than ten years in prison, a fine of not more than $250,000, a

7  supervised release term to follow incarceration of not more than

8  three years and a $100 special assessment.  Do you understand

9  that that's the maximum penalty that could be imposed here if you

10  decide you want to go forward and either plead guilty or you go

11  to trial and are found guilty?

12          MR. MOHAMUD:  Yes.

13          THE COURT:  Do you understand that?

14          MR. MOHAMUD:  Yes.

15          THE COURT:  Okay.  Now, I'm going to cover all of the

16  rights that you're giving up here if you decide you want to move

17  forward with this guilty plea.  These are all the rights that you

18  would normally have if you wanted to go to trial.  So, first, you

19  understand that you have a right to have this matter presented to

20  a jury and there would be 12 members of the jury and all 12 of

21  them would have to be unanimous.  They would all have to agree to

22  your guilt or your innocence before they could return a verdict

23  here in this matter.  Do you understand that?

24          MR. MOHAMUD:  Yes.

25          THE COURT:  Do you understand that during the course of

the trial, you would have the right to be represented by counsel.

And Ms. Allen would do all the things that a competent, well-

prepared lawyer does in a federal criminal case.  She would help

you select a jury.  She would make an opening statement to the

jury about the evidence.  She would cross-examine the

Government's evidence and also present whatever evidence you

wanted the jury to hear on this matter.  Do you understand that

that would be her function here?

        MR. MOHAMUD:  Yes.

        THE COURT:  Do you understand that during the course of

the trial, you would be presumed to be innocent of this charge?

In other words, the scales of justice would already be tilted in

your favor.  And the Government would have to overcome that

presumption of innocence here and prove your guilt beyond a

reasonable doubt which is the highest standard of proof required

in any proceeding in any court of the United States.  Do you

understand that right?

        MR. MOHAMUD:  Yes.

        THE COURT:  Do you understand that during the course of

the trial, you would have a right to be confronted by the

witnesses against you?  In other words, the Government would have

to produce its witnesses here in open court and Ms. Allen would

get an opportunity to cross-examine those witnesses.  Do you

understand that right?

        MR. MOHAMUD:  Yes.

1       THE COURT:  Do you understand that during the course of

2  the trial, you would also have a right to testify if you wanted

3  to take the stand and testify?  Do you know that?

4       MR. MOHAMUD:  Yes.

5       THE COURT:  Do you also know that correspondingly you

6  would have a right not to testify?  And the jury would be

7  instructed that they could not draw any adverse or bad inference

8  about your guilt or innocence here simply because you did not

9  testify?  Do you know that?

10       MR. MOHAMUD:  Yes.

11       THE COURT:  Do you know that you would have a right to

12  have witnesses subpoenaed here in support of your theory of the

13  case?  That those witnesses would be commanded to come down here

14  and testify.  Do you know you have that right?

15       MR. MOHAMUD:  Yeah.

16       THE COURT:  Do you also know that you have the right not

17  to present any evidence, not to testify, or call any witnesses,

18  and simply rely on the presumption of innocence and the high

19  standard of proof beyond a reasonable doubt and argue that the

20  Government has simply failed to produce its evidence here to meet

21  the standard of proof beyond a reasonable doubt.  And sometimes

22  defendants win on that basis.  Do you know that?

23       MR. MOHAMUD:  Yes.

24       THE COURT:  Do you also know that when you come in here

25  today and you tell me that you want to plead guilty under this

plea bargain arrangement, you're giving up all of these substantial constitutional and other rights, and the only thing that's going to happen here is I'll do the plea and then Judge Kays at some point will probably accept it and then there will be a sentencing here.  Do you understand that?

MR. MOHAMUD:  Yes.

THE COURT:  Now, during the course of these proceedings, you've been told, I'm sure, by Ms. Allen that I'm going to place you under oath and I'm going to ask you questions about why it is you think you're actually guilty of this charge, not why you're innocent, but why you think you actually are guilty here.  And because you're under oath, you have to tell me the truth.  Do you understand that?

MR. MOHAMUD:  Yes.

THE COURT:  Do you also understand that if someone would not tell me the truth while testifying here under oath, that each false statement a person might make in that exchange between me and the defendant could result in a prosecution for perjury.  And that carries a sentence of up to five years in prison for each false statement made.  Do you know that?

MR. MOHAMUD:  Yes.

THE COURT:  Now, with regard to the evidence here, I know the Government's practice is to provide open file or voluntary discovery here.  And you've done that in connection with this case, correct?

1    MR. CASEY:  Yes, Your Honor.

2    THE COURT:  Is there anything that you would be required

3  to produce under the rules of procedure here or other rules such

4  as *Giglio* or *Brady* that you've withheld from Ms. Allen?

5    MR. CASEY:  No, Your Honor.

6    THE COURT:  Okay.  And with regard to your review of

7  that file, have you had a chance to review and discuss it with

8  your client?

9    MS. ALLEN:  Yes, I have, Your Honor.

10    THE COURT:  And is it your professional opinion today

11  that this is a smart decision on his part to move forward with a

12  plea?

13    MS. ALLEN:  Yes, Your Honor.

14    THE COURT:  Okay.  Now, I had asked the Government, I

15  know there's a brief statement in the Plea Agreement here.  But

16  if the Government would outline for me the evidence in this case,

17  I'd appreciate it.

18    MR. CASEY:  Yes, Your Honor.  The evidence in this case

19  will be that on January 27th, the defendant submitted a passport

20  application at the post office in Gladstone, Missouri.  As part

21  of the process of submitting his passport application, you do it

22  in person at the post office and you sign the application under

23  penalty of perjury when you submit it.  That passport application

24  had on it a false statement.  In particular, the application said

25  -- had a box where it said "Countries to be visited" and the

application in this case stated "Canada" when the defendant had

no intention to visit Canada. Along with that passport

application the defendant included a flight itinerary, a

confirmed flight itinerary for a trip to Canada. And the reason

that that was included was the defendant was going to seek an

expedited passport. And in order to get an expedited passport

there has to be some confirmed travel arrangements to show the

State Department that you have planned travel. That confirmed

travel itinerary was a trip the defendant had no intention of

taking. After making that passport application with a false

statement on it, the defendant did secure a passport, which he

later used to travel on or about April 24th to Alexandria, Egypt.

He used it both to travel out of the country and travel back into

the country when he returned. When he returned on May 4th, the

defendant made -- had an interview with agents of the FBI. And

during that interview, defendant said that he had -- the only

place he ever intended to travel was Egypt and he had no intent

to travel somewhere else.

THE COURT: Okay. And the statement that he gave to the

bureau, was that a custodial statement?

MR. CASEY: It was a non-custodial statement, but he had

also been advised of and waived his *Miranda* rights.

THE COURT: Okay. And, Ms. Allen, do you concur that

the Government would have that evidence if they went to trial in

this matter?

1          MS. ALLEN:  Yes, Your Honor.

2          THE COURT:  Okay.  Now, with regard to the factual basis

3    here, Mr. Mohamud, I'd ask you, if you would, sir, please raise

4    your right hand and take the oath.  Is that all right?  Or is

5    there some other procedure you want me to follow here?

6          MS. ALLEN:  Your Honor, we would only ask that the Court

7    use the oath -- I think it's often referred to as the affirmation

8    oath that refers to a penalty of perjury and it's a secular oath.

9          THE COURT:  Okay.  And so, Mr. Mohamud, if you would

10   please raise your right hand?

11              ISSE AWEIS MOHAMUD, DEFENDANT, AFFIRMED

12         THE COURT:  And you understand that in testifying here

13   today under oath, if you would say something false here, you

14   could be exposed to the penalties for perjury, correct?

15         MR. MOHAMUD:  Yes.

16         THE COURT:  Okay.  Now, I'm just going to ask you some

17   general questions and then I'll let the lawyers, if there's a

18   need to, to follow-up.  With regard to the Indictment, the count

19   alleges that sometime between January 27th of 2017, and May 4th of

20   2017, you were here within the Western District of Missouri,

21   which is basically the Kansas City, Missouri, area here.  Is that

22   much true?

23              (Off Record Talking)

24         MR. MOHAMUD:  Yes.

25         THE COURT:  Okay.  So, I mean, and you can ask me

questions if you have any.  I don't want you to feel

uncomfortable in doing that.  Or you can take a break here and

talk with your counsel.  All right.  So, during that period of

time, January 27th to May 4th of 2017, you were here in the Kansas

City, Missouri, area.  That much is true, correct?

        MR. MOHAMUD:  Yes.

        THE COURT:  Okay.  And at the time, sometime along that

period did you apply for a passport?

        MR. MOHAMUD:  Yes.

        THE COURT:  And in the course of applying for this

passport, did you make a statement to the passport officials here

that you were going to travel to Canada?

        MR. MOHAMUD:  Yes.

        THE COURT:  And at the time you made that statement was

that statement false?

        MR. MOHAMUD:  Yeah.

        THE COURT:  Okay.  And when you made that statement to

those officials at the passport office, did you know that that

false -- that statement was false?

        MR. MOHAMUD:  Yes.

        THE COURT:  And you willfully, in other words, you

intentionally made that statement to the officials, is that

correct?

        MR. MOHAMUD:  Yes.

        THE COURT:  Okay.  And so do you think you're actually

1 guilty of this charge?

2          MR. MOHAMUD:  Yes.

3          THE COURT:  Okay.  Now, any additional examination that

4 the Government wants to conduct here?

5          MR. CASEY:  No, Your Honor.

6          THE COURT:  And any additional examination on the

7 factual basis by defense counsel?

8          MS. ALLEN:  No.  No, Your Honor.

9          THE COURT:  Okay.  Now, I'm going to move --

10                         (Off Record Talking)

11          MR. RASKIN:  Your Honor?

12          THE COURT:  Yes.

13          MR. RASKIN:  Just one narrow question.  Sorry, I'm

14 clearing my throat.

15          THE COURT:  That's all right.

16          MR. RASKIN:  There are actually two prongs of this

17 statute that are charged here.  One is actually gaining the

18 application, the other is actually using the passport.  So, we

19 would just request that Your Honor ask the defendant something

20 that I think the FBI knows, which is did he actually use the

21 passport that he acquired based on the application with the false

22 statement.

23          THE COURT:  Yeah.  So, the question is after you got the

24 passport, did you then, rather than travel to Canada, actually

25 travel to Egypt?  Is that true?

1    MR. MOHAMUD:  Yes.

2    THE COURT:  And that wasn't some mistake or something,

3  that was your intention all along, correct?

4    MR. MOHAMUD:  Yes.

5    THE COURT:  Okay.  Now, any additional questions here?

6  Any additional follow-up here?

7    MS. ALLEN:  No, Your Honor.

8    THE COURT:  Okay.  Now, I'm going to move to the Plea

9  Agreement here.  Now, Mr. Mohamud, this is a 13-page agreement

10  that you and your counsel have seen, and I know Ms. Allen has

11  already gone through it with you.  But I want to cover just some

12  of the highlights here with you.  And what I'm going to do is I'm

13  going to refer to the page that's at the bottom and then the

14  paragraph that I'm talking about on that page.  And the idea here

15  is just to make sure that you understand kind of what this is all

16  about.  That's all I'm trying to do here.  At page 1 at Paragraph

17  1, it talks about the parties.  And you understand that the

18  parties here are just you and the United States Attorney for the

19  Western District of Missouri.  This plea bargain doesn't bind any

20  other prosecutor, state or federal, other than these U.S.

21  Attorneys here in the Western District of Missouri.  Do you

22  understand that?

23    MR. MOHAMUD:  Yes.

24    THE COURT:  At Paragraph 2, it says that you're going to

25  plead guilty to Count One and we've talked about that.  So, let's

move on to page 2. At page 2, Paragraph 3, it's the Factual

Basis for the Guilty Plea. Have you read that?

MR. MOHAMUD: Yes.

THE COURT: And do you agree that that's all true?

MR. MOHAMUD: Yes.

THE COURT: Then at Paragraph 4, it talks about the use

of those facts. And it says that it can be used both here to

take your plea before me and also in connection with your

sentencing before Judge Kays. Do you understand that?

MR. MOHAMUD: Yes.

THE COURT: At Paragraph 5, it talks about the penalty

ranges here and we've covered that. Now, this is the ten years

and the $250,000 fine, three years on supervised release and a

$100 special assessment. That's the maximum that this statute

allows. That's not what we're agreeing to, but that's the

maximum here. Do you understand that?

MR. MOHAMUD: Yes.

THE COURT: Then at page 3, Paragraph 6, it talks about

the sentencing here. And here you've locked in the trial judge,

the District Court Judge, Judge Kays, to impose a sentence of 48

months of imprisonment. So, Judge Kays has to impose a sentence

of 48 months here. And if Judge Kays decides that he's not going

to do that for some reason, he has to give you and the Government

the opportunity to withdraw from the plea here. So, if you're

not going to get a sentence of 48 months, then you can withdraw

1  your plea and simply go to trial here.  Okay.  Do you understand

2  all of that?

3          MR. MOHAMUD:  Yes.

4          THE COURT:  Okay.  Now, I'm going to go to page 4,

5  Paragraph 7.  The Government here is saying that they're agreeing

6  to simply not bring any additional charges as a result of the

7  behavior here.  In other words, this is going to wrap up whatever

8  problems you've got with the prosecuting attorneys here in

9  connection with this event with the passport.  Do you understand

10  that?

11          MR. MOHAMUD:  Yes.

12          THE COURT:  Okay.  Now, over at page 5 there is

13  Paragraph 9, it talks about the withdrawal of the plea here.  And

14  that specifically contains language that says that if the

15  agreement is not accepted by the court, you may withdraw from it.

16  So, do you see that and do you understand that?  Do you

17  understand that?

18          MR. MOHAMUD:  Yes.

19          THE COURT:  Okay.  Then at Paragraph 10, these are the

20  guidelines.  Have you reviewed and talked to Ms. Allen about the

21  guidelines here?

22          MR. MOHAMUD:  Yes.

23          THE COURT:  And so basically what they provide, Mr.

24  Mohamud, is simply like a grid.  It's like this grid that we use.

25  And we look over on one column to see how serious this crime is

and then we look down at another column to see what your criminal history, if any, might be. And then the judge comes up with a figure in months that somebody is supposed to get here. And so, in this case, though, you've agreed with the Government to 48 months. So, that's binding on the court. But I want to at least go through these guidelines with you so you have some rudimentary understanding. First of all, under 10(a) they're advisory. In other words, our judges are not bound by them. Do you understand that?

MR. MOHAMUD: Yes.

THE COURT: Then at Paragraph (b), it says your base level is an 8. This is at page 6. Paragraph (b) says a base level of 8 and then it says in (c) you're going to get a four-level enhancement, which is bad news for you. It kicks it up to 12. And then under (d), it says they're going to -- this is a case that has no direct evidence of any kind of association with a crime of terrorism, so there's not going to be any kind of increase for that. The parties are agreeing that we don't have anything there. And then at (e), it says that you're accepting responsibility for the crime, so it's going to kick it down a couple of levels, which brings it back down a couple of points. But then finally on (f), it says there's no agreement on your criminal history. Do you understand all that stuff?

MR. MOHAMUD: Yes.

THE COURT: Okay. I'm not going to pursue it any

further, except to point out in (h) that again we lock in this
48-month deal that we're talking about here.  It says you and the
Government confirm that Paragraph 6 provides the recommended
guideline sentence here.  So, it's bound in and locked in there.
I'm going to skip over.  I don't really have anything else here,
other than a section here that always is kind of confusing, I
think, to some clients such as yourself.  That's at page 9,
Paragraph 15.  This is what we call a waiver of your appellate
and post-conviction rights.  And basically it says here that you
are agreeing that you're waiving your right to appeal or
collaterally attack this plea of guilty following the acceptance
of the plea here.  The only grounds that are being reserved are
ineffective assistance of your counsel, Ms. Allen, or
prosecutorial misconduct by these two prosecutors over here.  Do
you understand that paragraph?

        MR. MOHAMUD:  Yes.

        THE COURT:  Then under (d), it says basically the same
thing that you're waiving any right to appeal your sentence here,
except for, you know, if the judge gives you the 48 months, then
you waived any other rights to appeal the sentence here, except
for ineffective assistance of counsel, prosecutorial misconduct,
or if Judge Kays would impose an illegal sentence here.  So, if
he would do something that the law doesn't allow obviously you'd
have a right to appeal that.  Do you understand all that
business?

1      MR. MOHAMUD:  Yes.

2      THE COURT:  Okay.  Now, I'm not going to go through any

3  of this other stuff here.  It's a lot of boilerplate conditions

4  here.  But has everything you've been promised contained within

5  the four corners of this document?

6      MR. MOHAMUD:  Yes.

7      THE COURT:  Do you want to ask me any questions about it

8  at this point?

9      MR. MOHAMUD:  No.

10     THE COURT:  Has anyone made any threats or promises to

11  you to get you to come in here and plead guilty?

12                    (Off Record Talking)

13     MS. ALLEN:  Your Honor, the only thing, and I think this

14  is still perfectly appropriate, is there was a possibility of a

15  superseding indictment --

16     THE COURT:  Oh, yeah, sure.

17     MS. ALLEN:  -- in this particular case.

18     THE COURT:  Yeah.

19     MS. ALLEN:  But I don't think that that is in any way an

20  inappropriate situation.  But other that --

21     THE COURT:  Okay.

22     MS. ALLEN:  And I'll let him answer as well, but I think

23  that's what he was kind of questioning about.

24     THE COURT:  Thank you for that clarification.  So, I

25  mean, I assume that the Government has said that if you didn't

1    come in here and plead guilty that they might consider or would

2    consider superseding with more serious charges here or what?

3          MR. CASEY:  That's correct, Your Honor.

4          THE COURT:  Okay.  And so, but other than that, which

5    they have the legal authority to do that, I mean, other than that

6    kind of a threat, are there any other threats or promises that

7    have been made to you to get you to come in here and plead

8    guilty?

9          MR. MOHAMUD:  No, sir.

10          THE COURT:  Okay.  So, it's your free and voluntary act,

11    is that right?

12          MR. MOHAMUD:  Could you repeat that?

13          THE COURT:  Is it your free and voluntary act then?

14          MS. ALLEN:  Meaning you're doing it on your own free

15    will?

16          MR. MOHAMUD:  Yes.

17          THE COURT:  Okay.  Thank you.  How about your

18    relationship with Ms. Allen?  Now, I have a very high regard for

19    her, but has she done anything that you haven't wanted her to do?

20          MR. MOHAMUD:  No, sir.

21          THE COURT:  Has there been anything that she's failed to

22    do that you've asked her to do?

23          MR. MOHAMUD:  No, sir.

24          THE COURT:  Are you then satisfied with the advice and

25    the guidance that she's given you here?

1        MR. MOHAMUD:  Yes.

2        THE COURT:  Tell me about your age.  How old are you?

3        MR. MOHAMUD:  Twenty-two, almost twenty-three.

4        THE COURT:  You're what now?

5        MR. MOHAMUD:  Twenty-two, almost twenty-three.

6        THE COURT:  Twenty-two.  Okay.  When you get to be my

7   age you might forget, but I don't think you should be forgetting.

8   And how far have you gone in school?

9        MR. MOHAMUD:  Graduated from high school.

10       THE COURT:  Okay.  And so you read, write and understand

11  English well enough, correct?

12       MR. MOHAMUD:  Yes, sir.

13       THE COURT:  Is there anything about this Plea Agreement

14  or what we've talked about here today that you haven't followed?

15       MR. MOHAMUD:  I understand it all.

16       THE COURT:  Okay.  Tell me about your mental health.

17  Anything about your mental condition today that would affect your

18  ability to make an intelligent decision about pleading guilty?

19       MR. MOHAMUD:  No, sir.

20       THE COURT:  Anything about your physical health, any

21  pain or anything like that that would affect your ability to

22  plead guilty?

23       MR. MOHAMUD:  No, sir.

24       THE COURT:  You're not on any drugs or any kind of

25  substance that affects your judgment, right?

1        MR. MOHAMUD:  No, sir.

2        THE COURT:  And with regard to the -- I'm finished now

3 with all those questions, and now I'm going to ask you -- before

4 I go and I ask Ms. Allen for the plea of guilty here, is there

5 anything that you want to raise with me that maybe Ms. Allen or

6 no one else has been able to answer for you?  Anything that's

7 gnawing at you right now about this case?

8        MR. MOHAMUD:  No, sir.

9        THE COURT:  Okay.  Then, Ms. Allen, pursuant to this

10 Plea Agreement that we have here, what is the plea to this one

11 count?

12        MS. ALLEN:  Guilty, Your Honor.

13        THE COURT:  Your plea now is guilty to this charge under

14 this plea bargain arrangement, correct?

15        MR. MOHAMUD:  Yes, sir.

16        THE COURT:  Thank you.  We'll go ahead and accept that

17 plea and enter it into the record here at the federal district

18 court.  The plea won't be finally accepted as interpreted by the

19 Plea Agreement here until such time as Judge Kays has an

20 opportunity to review the transcript and my R&R.  And if there

21 are any objections, entertain those objections.  But I'll order a

22 Presentence Investigation by Pretrial.  And what'll happen at

23 this point, Mr. Mohamud, is about eight to ten weeks out there

24 will be a report, a Pretrial Services Report -- or a Pre-

25 Sentencing Report.  You'll get a chance to see it and make sure

it's accurate.  And then you'll go in front of Judge Kays and there will be a sentencing.  Okay.  Anything else for the Government?

        MR. CASEY:  Nothing from the United States, Your Honor.

        THE COURT:  Anything else from Ms. Allen?

        MS. ALLEN:  Nothing further, Your Honor.

        THE COURT:  Okay.  Thank you all.

             (Court Adjourned at 10:35 a.m.)

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.


/s/ Lissa C. Whittaker          September 14, 2017
Signature of transcriber              Date